1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BAJA INSURANCE SERVICES, INC.,                No.  2:14-CV-02423-KJM-AC

12                    Plaintiff,

13            v.                                    ORDER

14   SHANZE ENTERPRISES, INC.,

15                    Defendant.

16

17

18              This trademark infringement action arises from each party's use of the words

19   "Baja" and "Insurance" to advertise and sell auto insurance services to Hispanic consumers in

20   California and Texas.  Defendant's motion for judgment on the pleadings is before the court, ECF

21   No. 25, as well as defendant's motion for leave to file an amended answer and counterclaim, ECF

22   No. 37, and plaintiff's motion for leave to amend the first amended complaint, ECF No. 44.  The

23   court decided the motions without a hearing.  As explained below, the court DENIES defendant's

24   motion for judgment on the pleadings, GRANTS defendant's motion for leave to file an amended

25   answer and counterclaim, and GRANTS plaintiff's motion for leave to amend the first amended

26   complaint.

27   /////

28   /////

                                                  1

1    I.        JUDICIAL NOTICE

2              Under Federal Rule of Evidence 201, the court may take judicial notice of

3    adjudicative facts that are not subject to reasonable dispute because they are either "generally

4    known within the trial court's territorial jurisdiction" or "can be accurately and readily

5    determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

6    201(b).  The court "must take judicial notice if a party requests it and the court is supplied with

7    the necessary information."  Fed. R. Evid. 201(c)(2).

8              Here, defendant requests judicial notice of the file wrappers for plaintiff's

9    federally registered trademarks from the United States Patent and Trademark Office ("USPTO"),

10   Def.'s Exs. A & B, ECF Nos. 25-3–25-4, and a public record of plaintiff's license to sell

11   insurance in Texas from the Texas Department of Insurance, Def.'s Ex. C, ECF No. 25-5.

12   Defendant seeks to offer the documents to show statements plaintiff made in order to obtain the

13   trademark registrations and incontestable status, as well as the date plaintiff obtained a license to

14   sell insurance in Texas.  ECF No. 26 at 2.  Defendant's request for judicial notice is unopposed.

15   Because these documents are public records that "can be accurately and readily determined from

16   sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), the court takes

17   judicial notice of defendant's Exhibits A, B, and C, ECF Nos. 25-3–25-5 ("Def.'s Exs. A–C").

18   *See Autodesk, Inc. v. Dassault Sys. SolidWorks Corp.*, No. 08-04397, 2008 WL 6742224, at *2

19   n.1 (N.D. Cal. Dec. 18, 2008) (taking judicial notice of trademark registrations and applications

20   publicly available on USPTO website) (citing *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948,

21   954 (Fed. Cir. 1993)).  The court also takes judicial notice of the registration certificates and

22   maintenance records issued by the USPTO for plaintiff's trademarks, attached as Exhibits 1 and 2

23   to plaintiff's first amended complaint, ECF Nos. 8-1–8-2 ("Pl.'s Exs. 1–2").  Fed. R. Evid.

24   201(b).

25   II.       BACKGROUND

26             Plaintiff Baja Insurance Services, Inc. is headquartered in Sacramento, California,

27   and started selling auto, home, life, and business insurance in California as "Baja Insurance

28   Services, Inc." in 1998.  First Am. Compl. ¶¶ 1, 7, ECF No. 8 ("FAC").  Plaintiff applied for

2

1   federal protection of its first mark, a word and design mark, on June 11, 2007.  Pl.'s Ex. 1; Def.'s

2   Ex. A.  Plaintiff filed its application for its second mark, a word-only mark, on April 14, 2010.

3   Pl.'s Ex. 2; Def.'s Ex. B.  The USPTO granted registration of plaintiff's marks, Registration

4   Numbers 3,568,815 ("the '815 Mark") and 3,919,175 ("the '175 Mark"), in February 2009 and

5   February 2011, respectively.  FAC ¶ 9; Pl.'s Exs. 1 & 2; Def.'s Exs. A & B.  Defendant Shanze

6   Enterprises, Inc., which is now known as Plano Insurance Group, Inc. ("defendant Plano"), is

7   headquartered in Dallas, Texas and formerly sold auto insurance under the trade name "Baja Auto

8   Insurance."  FAC ¶¶ 2, 8; *see* ECF No. 11; Def.'s Mem. P. & A. Mot. J. Pleadings at 1, ECF No.

9   25-1 ("Def.'s Mem. P. & A.").

10          At the time plaintiff obtained its trademark registrations, the parties did not have

11  licenses permitting them to sell insurance outside of their respective home states.  On January 29,

12  2013, plaintiff acquired a license from the Texas Department of Insurance to sell auto insurance

13  in Texas.  Def.'s Ex. C; *see* FAC ¶ 25 (plaintiff filed paperwork for a non-resident license in

14  Texas in late 2012 and early 2013, and opened a virtual office in Texas in June 2013).  On June

15  24, 2014, plaintiff's '815 Mark became incontestable within the meaning of Section 15 of the

16  Lanham Act, 15 U.S.C. § 1065.  Def.'s Ex. A; FAC ¶ 9.  On October 15, 2014, plaintiff filed this

17  action.  Compl., ECF No. 1.  On January 27, 2015, plaintiff filed the operative first amended

18  complaint, which asserts claims under the Lanham Act, 15 U.S.C. §§ 1114(1)(a) & 1125(a);

19  California state trademark law, Cal. Bus. & Prof. Code § 14245; California Unfair Competition

20  Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and California False Advertising Law, Cal. Bus.

21  & Prof. Code §§ 17500, *et seq.  See* FAC ¶¶ 29–39.

22          On August 20, 2015, defendant filed a motion for judgment on the pleadings under

23  Federal Rule of Civil Procedure 12(c).  Mot., ECF No. 25.  On October 9, 2015, plaintiff opposed

24  defendant's motion, or in the alternative, requested leave to amend the first amended complaint.

25  Opp'n, ECF No. 30.  Defendant replied on October 23, 2015 and supplemented its reply on

26  November 11, 2015.  Reply, ECF No. 31; Supplement, ECF No. 33.  Plaintiff responded to

27  defendant's November 11 submission on November 12, 2015.  ECF No. 34.

28

1     On December 11, 2015, defendant filed a motion for leave to file an amended

2 answer and counterclaim.  ECF No. 37.  Plaintiff opposed the motion, ECF No. 39, and defendant

3 replied, ECF No. 42.  On February 22, 2016, plaintiff filed a motion for leave to amend the first

4 amended complaint to join additional defendants.  ECF No. 44.  Defendant opposed the motion.

5 ECF No. 45.

6 III.     MOTION FOR JUDGMENT ON THE PLEADINGS

7     A.     Rule 12(c) Legal Standard

8     Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the

9 pleadings are closed—but early enough not to delay trial—a party may move for judgment on the

10 pleadings." Fed. R. Civ. P. 12(c).  A Rule 12(c) motion may raise the defense of failure to state a

11 claim upon which relief can be granted.  Fed. R. Civ. P. 12(h)(2)(B).  The same standard of

12 review applies to motions brought under Rule 12(c) or Rule 12(b)(6), and many of the same rules

13 delineated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550

14 U.S. 544 (2007), apply to Rule 12(c) motions.  *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4*

15 *Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) ("Rule 12(c) is 'functionally identical' to Rule

16 12(b)(6) . . . .").

17     "Judgment on the pleadings is properly granted when there is no issue of material

18 fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v.*

19 *Pickard*, 581 F.3d 922, 925 (9th Cir. 2009); *Merchs. Home Delivery Serv., Inc. v. Frank B. Hall*

20 *& Co.*, 50 F.3d 1486, 1488 (9th Cir. 1995).  "A dismissal may be affirmed only if it is clear that

21 no relief could be granted under any set of facts that could be proved consistent with the

22 allegations." *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004) (Rule 12(b)(6)) (internal

23 quotation marks and citation omitted).

24     In resolving a motion for judgment on the pleadings, the court "must accept all

25 factual allegations in the complaint as true and construe them in the light most favorable to the

26 non-moving party." *Fleming*, 581 F.3d at 925.  However, the court is not required to accept as

27 true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286

28 (1986), *quoted in Twombly*, 550 U.S. at 555, or "allegations that contradict matters properly

4

1  subject to judicial notice" or material attached to or incorporated by reference into the complaint,

2  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001).  A court's

3  consideration of documents attached to a complaint, documents incorporated by reference in the

4  complaint, or matters of judicial notice will not convert a motion for dismissal into a motion for

5  summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of*

6  *Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

7          B.      Discussion

8                  The Lanham Act allows the holder of a protectable trademark to hold liable any

9  other person who, without consent, "use[s] in commerce any . . . registered mark in connection

10  with the sale, offering for sale, distribution, or advertising of any goods or services or in

11  connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."

12  15 U.S.C. § 1114(1)(a).  Courts analyze a federal trademark claim under a two-prong test.  *KP*

13  *Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005).  First,

14  the trademark holder "must demonstrate that it owns a valid mark, and thus [has] a protectable

15  interest."  *Id.* (citing *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002)).

16  Second, the holder must show that the alleged infringer's use of the mark "is likely to cause

17  confusion, or to cause mistake, or to deceive."  *Id.* (quoting 15 U.S.C. § 1114(1)(a) & (b); citation

18  omitted).  Although trademark disputes are generally viewed as intensely factual in nature, a

19  challenger is entitled to judgment as a matter of law if it "can demonstrate through law,

20  undisputed facts or a combination thereof that the mark is invalid."  *KP Permanent Make-Up*, 408

21  F.3d at 602, 605 (analyzing validity of trademark on summary judgment) (quoting *Tie Tech*, 296

22  F.3d at 783).

23              1.      Whether Plaintiff's Marks Are *Void Ab Initio*

24                  a)      Presumption of Validity

25                  Federal registration endows a trademark with a "strong presumption" of validity

26  and shifts the burden to the defendant "to show by a preponderance of the evidence that the mark

27  is not protectable."  *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113–14 (9th

28  Cir. 2010) (citing 15 U.S.C. §§ 1057(b), 1115(a); citations omitted).  After a registered mark has

been in continuous use in commerce for five consecutive years, its owner may apply for incontestable status under 15 U.S.C. § 1065.  *See KP Permanent Make-Up*, 408 F.3d at 602–03. Incontestable status is "conclusive evidence of the registrant's exclusive right to use the registered mark," subject to the defenses enumerated in 15 U.S.C. § 1115(b), such as that the status was obtained fraudulently.  *Pyrodyne Corp. v. Pyrotronics Corp.*, 847 F.2d 1398, 1400–01 (9th Cir. 1988); *see* 15 U.S.C. § 1115(b).

Here, the pleadings allege plaintiff registered its marks with the USPTO in 2009 and 2011, and plaintiff's '815 Mark became incontestable within the meaning of 15 U.S.C. § 1065 on June 24, 2014.  FAC ¶ 9.  The parties have submitted judicially-noticed documentation of the marks' registration and plaintiff's Declaration for Incontestability.  Pl.'s Exs. 1 & 2; Def.'s Ex. A (Pl.'s Decl. for Incontestability); Def.'s Ex. B.  The federal registration of the marks entitles plaintiff to a strong presumption that its marks are valid and shifts the burden to defendant to show that the marks are not protectable.  *See KP Permanent Make-Up*, 408 F.3d at 604; *Zombondo Entm't*, 602 F.3d at 1114.  With respect to the '815 Mark, its incontestable status is conclusive evidence of plaintiff's exclusive right to use the mark, unless defendant can prove one of the defenses enumerated in 15 U.S.C. § 1115(b).  *See Pyrodyne*, 847 F.2d at 1400–01.

b)  <u>Whether Defendant Has Pierced the Presumption of Validity</u>

Defendant argues the marks were not "used in commerce" when plaintiff filed for registration, as required by 15 U.S.C. § 1051(a), because plaintiff had a license to sell insurance only within the state of California at the time.  Def.'s Mem. P. & A. at 8–12.  In response, plaintiff submitted declarations stating its insurance policies covered automobiles that traveled interstate, its policies covered accidents that occurred in other states, and it wrote policies for customers that reside in Mexico.[1]  Ordonez Decl. ¶¶ 3, 6, ECF No. 30-2; Smith Decl. ¶¶ 3, 6, ECF No. 30-3.

---

[1] On November 11, 2015, defendant submitted a letter plaintiff wrote in 2008, which defendant claims directly refutes the testimony offered in the Ordonez and Smith declarations. ECF No. 33.  The relevant portion of the letter states: "2. We operate in California and do not have any businesses in the states of Mexico nor plan to operate in the states of Mexico."  *Id.* at Ex. A.  Plaintiff responds that the letter was intended to clarify that it did not operate any physical

1    To obtain federal protection based on existing use of a trademark (15 U.S.C.

2    § 1051(a)), the mark must be "in use in commerce" as of the application filing date.  15 U.S.C.

3    § 1051(a)(3)(C); 37 C.F.R. § 2.34(a)(1)(i).  15 U.S.C. § 1127 states that "[t]he term 'use in

4    commerce' means the bona fide use of a mark in the ordinary course of trade, and not made

5    merely to reserve a right in a mark."  *Id.*  The statute goes on to provide two separate

6    requirements for a mark to be deemed in "use in commerce" on services: (1) the mark owner must

7    use or display the mark in the sale or advertising of the services to customers, and (2) the mark

8    owner must render the services in commerce.  *See id.* (defining "use in commerce"); *see also*

9    *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1204 (9th Cir. 2012).  Although

10   defendant is correct that a mark owner must satisfy both requirements as a result of the use of the

11   conjunctive "and" in § 1127, *see Rearden*, 683 F.3d at 1204, the court does not agree with

12   defendant's interpretation that § 1127 also requires plaintiff to show that it advertised its services

13   in more than one state.  *See* Reply at 6–8.  The Ninth Circuit in *Rearden* analyzed each

14   requirement distinctly, and did not examine whether the advertising itself targeted customers from

15   multiple states.  *See Rearden*, 683 F.3d at 1204–08.  This court's interpretation is consistent with

16   the fact that § 1127 extended the scope of federal trademark jurisdiction to "all commerce which

17   may lawfully be regulated by Congress," 15 U.S.C. § 1127 (defining "commerce"), rather than

18   imposing heightened showings of interstate use for a mark to receive federal protection.

19                    (1)    Use or Display of Mark

20                    With respect to the first requirement under *Rearden*, defendant has not established

21   as a matter of law that plaintiff's marks were not used or displayed in connection with its

22   insurance services as of 2007 and 2010, when plaintiff filed its applications for registration.  Pl.'s

23   Exs. 1 & 2; Def.'s Ex. A & B.  The first amended complaint alleges that plaintiff has rendered

24   insurance services since 1998 and has used its marks to advertise its services since the company's

25   inception.  *See* FAC ¶¶ 7–16.  Exhibit C to plaintiff's first amended complaint includes

26

27   storefronts in the states of Mexico.  ECF No. 34.  The court does not find that the letter
     undermines the testimony in the Ordonez and Smith declarations.

28

1   representative samples of materials showing plaintiff's use of the marks in connection with its

2   services.  Pl.'s Ex. 3, ECF No. 8-3.

3         Defendant has not provided evidence establishing as a matter of law that plaintiff's

4   allegations are untrue.  Defendant has not provided any evidence showing that plaintiff did not in

5   fact render insurance services in 2007 and 2010, or that plaintiff registered its marks simply to

6   reserve a future right in the marks.  *See* 15 U.S.C. § 1127 ("The term 'use in commerce' means

7   the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right

8   in a mark.").  Accordingly, the first amended complaint sufficiently pleads that plaintiff used or

9   displayed its marks in connection with its services as of 2007 and 2010.

10                    (2)      Rendering of Services "in Commerce"

11        Defendant's arguments appear more directed toward the second requirement under

12  *Rearden*, that the services be rendered "in commerce."  In arguing that plaintiff must have had a

13  license to sell insurance in Texas to render services "in commerce" under § 1127, defendant

14  construes the term "commerce" too narrowly.  Section 1127 defines the word "commerce" to

15  include "all commerce which may lawfully be regulated by Congress."  15 U.S.C. § 1127.  It is

16  well established that Congress has broad powers under the Commerce Clause, U.S. Const. art. I,

17  § 8, and may regulate an activity, even though it is wholly intrastate, if it directly affects interstate

18  commerce.  *Thompson Tank & Mfg. Co. v. Thompson*, 693 F.2d 991, 993 (9th Cir. 1982)

19  (collecting cases); *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 120 (9th

20  Cir. 1968); *see also Trademark Manual of Examining Procedure* § 901.03 ("[I]f intrastate use

21  directly affects a type of commerce that Congress may regulate, this constitutes use in commerce

22  within the meaning of the Act.").  In *Larry Harmon Pictures Corp. v. Williams Restaurant Corp.*,

23  929 F.2d 662 (Fed. Cir. 1991), for example, the Federal Circuit held that a single-location

24  restaurant rendered services "in commerce" because it served interstate travelers.  *Id.* at 663–66;

25  *see also Application of Gastown, Inc.*, 326 F.2d 780, 782 (C.C.P.A. 1964) (an automotive service

26  station located in one state rendered services "in commerce" because its services were available

27  to customers traveling interstate on federal highways).

28

8

As stated above, plaintiff has provided declarations stating its insurance policies covered automobiles that traveled interstate, its policies covered accidents that occurred in other states, and it wrote policies for customers that reside in Mexico. Ordonez Decl. ¶¶ 3, 6, ECF No. 30-2; Smith Decl. ¶¶ 3, 6, ECF No. 30-3. Like the single-location restaurant in *Harmon Pictures* and the automotive service station in *Gastown*, these alleged insurance activities directly affect interstate travel and commerce, and thus would constitute services rendered "in commerce" if proven at trial. A court may grant judgment on the pleadings "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Turner*, 362 F.3d at 1225 (citation omitted). Because plaintiff could prove facts consistent with its pleadings that establish that it used its marks "in commerce," defendant is not entitled to judgment on the pleadings.

To the extent defendant challenges the adequacy of the evidence proving that plaintiff in fact used its mark in the way it alleges, such a challenge is properly brought through a motion for summary judgment, if brought before trial. While a court may consider judicially noticeable facts in resolving a motion on the pleadings, *see Ritchie*, 342 F.3d at 907–08, the inquiry under Rule 12(b)(6) or 12(c) tests the adequacy of the pleadings, not the adequacy of the evidence, *see Solid 21, Inc. v. Breitling USA, Inc.*, 512 F. App'x 685, 687 (9th Cir. 2013) (unpublished).

### 2.    Cancellation of '815 Mark Based on Fraudulent Procurement

Defendant similarly argues that because plaintiff's marks were not used "in commerce" until plaintiff obtained a license to sell insurance in Texas in 2013, plaintiff's representations in its Declaration of Incontestability were false, and the '815 Mark should be canceled for fraudulent procurement of incontestability. Def.'s Mem. P. & A. at 12–15. To cancel a trademark for fraud, the party seeking cancellation must show "a false representation regarding a material fact, the registrant's knowledge or belief that the representation is false, the intent to induce reliance upon the misrepresentation and reasonable reliance thereon, and damages proximately resulting from the reliance." *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990). In its Declaration of Incontestability, which it filed in June 2014, plaintiff represented

9

1   that its '815 Mark had been "in continuous use in commerce for five consecutive years after the

2   date of registration."  Def.'s Ex. A at 12–13.  For the reasons discussed above, defendant has not

3   established that this representation was false.  Accordingly, defendant has not shown plaintiff's

4   '815 Mark should be canceled at this stage.

5                   3.        Statute of Limitations

6                          a)        Trademark Claims

7                  Defendant also asserts it is entitled to judgment as a matter of law because

8   plaintiff's claims are time-barred.  Def.'s Mem. P. & A. at 15–18.  When a federal statute does

9   not include a statute of limitations, courts "generally presume that Congress intended to 'borrow'

10  the limitations period from the most closely analogous action under state law." *Jarrow Formulas,*

11  *Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836 (9th Cir. 2002).  The Ninth Circuit has held that

12  Lanham Act claims are subject to California's three-year statute of limitations for actions

13  grounded in fraud, which begins to run upon plaintiff's "actual or constructive knowledge of the

14  wrong." *Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir.

15  2002); *see* Cal. Civ. Proc. Code § 338(d) (an action grounded in fraud or mistake "is not deemed

16  to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or

17  mistake").  Courts ordinarily "leave the question of whether a plaintiff knew or should have

18  become aware of a fraud to the jury." *Gen. Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397

19  (9th Cir. 1991) (citation omitted).

20                  Plaintiff filed this action on October 15, 2014.  ECF No. 1.  Applying the three-

21  year limitations period, plaintiff's trademark claims are barred if it had actual or constructive

22  knowledge of the infringement before October 15, 2011.  Plaintiff alleges that it first had actual

23  knowledge of Baja Insurance's infringement in November 2012. FAC ¶¶ 8, 25.  The first

24  amended complaint explains that "[a]s early as 2011, Plaintiff began receiving telephone calls,

25  emails and written correspondence from various Texas residents who were either requesting

26  insurance quotes, asking for customer service, making insurance claims and/or making yearly

27  premium payments." *Id.* ¶ 21.  The number and frequency of calls and correspondence steadily

28  increased over time, and plaintiff initiated an investigation into the misdirected communications.

10

1   *Id.* ¶¶ 21–22.  Plaintiff eventually realized that these communications were intended for defendant

2   in November 2012.  *Id.* ¶¶ 8, 21–22.  Plaintiff did not apply for a non-resident license with the

3   Texas Department of Insurance until late 2012, and did not open an office in Texas until June

4   2013.  *Id.* ¶ 25.  The court finds that the first amended complaint sufficiently pleads that plaintiff

5   first had actual knowledge of the alleged infringement in November 2012, which is within three

6   years of the date plaintiff filed this action.

7          Defendant argues that plaintiff's claims should be barred under *Herrera-Diaz v.*

8   *U.S. Department of Navy*, 845 F.2d 1534 (9th Cir. 1988), because plaintiff would have discovered

9   the infringement prior to October 15, 2011 if it had exercised "reasonable diligence."  Def.'s

10  Mem. P. & A. at 16 (quoting *Herrera-Diaz*, 845 F.2d at 1537).  In *Herrera-Diaz*, the court held

11  that the statute of limitations in a medical malpractice claim began to run when the mother was

12  told that her child suffered from cerebral palsy and that the condition was caused by a lack of

13  oxygen to the brain at or near the time of birth.  845 F.2d at 1537–38.  The court held that at that

14  point, the mother had the burden to ascertain "the existence and source of fault" and determine

15  whether or whom to sue.  *Id.* at 1537.

16         In contrast to the facts in *Herrera-Diaz*, defendant Plano has not demonstrated that

17  plaintiff was directly notified of the injury or cause of the injury prior to October 15, 2011.  The

18  only facts defendant provides to support its argument are that the first amended complaint alleges

19  plaintiff began receiving communications intended for defendant at an unspecified time in 2011,

20  FAC ¶ 21, and that defendant had filed an application with the USPTO for a service mark, which

21  it abandoned in May 2009, *id.* ¶ 22.  These two facts alone do not establish as a matter of law that

22  plaintiff had constructive knowledge of the infringement before October 15, 2011.  Construing

23  the facts in the light most favorable to plaintiff, disputes of material fact exist as to whether

24  plaintiff reasonably should have discovered the alleged trademark infringement prior to October

25  15, 2011.  *See Gen. Bedding Corp.*, 947 F.2d at 1397 ("Ordinarily we leave the question of

26  whether a plaintiff knew or should have become aware of a fraud to the jury." (citation omitted));

27  *cf. Fleming*, 581 F.3d at 925 ("Judgment on the pleadings is properly granted when there is no

28

11

1   issue of material fact in dispute, and the moving party is entitled to judgment as a matter of

2   law.").

3          Because plaintiff has stated a claim for trademark infringement and defendant has

4   not demonstrated that its trademark claims are time-barred, defendant's motion for judgment on

5   plaintiff's federal and state trademark claims is denied.  As a result, defendant's motion for

6   judgment on plaintiff's false advertising claim is also denied, because it rests solely on dismissal

7   of plaintiff's trademark claims.[2]  *See* Def.'s Mem. P. & A. at 18–19.

8                    b)    <u>Unfair Competition Claim</u>

9          California unfair competition claims are subject to a four-year statute of

10  limitations, which begin to run on the date the cause of action accrued.  *See Aryeh v. Canon Bus.*

11  *Solutions, Inc.*, 55 Cal. 4th 1185, 1196–97 (2013); *see also* Cal. Bus. & Prof. Code § 17208.  The

12  California Supreme Court has held, however, that the date of accrual of an unfair competition

13  claim is subject to a number of equitable exceptions and modifications, such as the discovery rule,

14  equitable tolling, fraudulent concealment, the continuing violation doctrine, and the theory of

15  continuous accrual.  *Aryeh*, 55 Cal. 4th at 1192, 1196 (holding common law accrual rules apply to

16  unfair competition claims).

17         Courts generally apply a burden-shifting framework to evaluate a statute of

18  limitations defense.  Defendant bears the initial burden of proving plaintiff's unfair competition

19  claim is barred by section 17208's four-year limitations period.  *See id.* at 1197.  Thereafter, the

20  burden shifts to plaintiff to demonstrate its claim survives based on one or more common law

21  exceptions to the basic date of accrual.  *See id.*  "That burden may be imposed even at the

22  pleading stage."  *Id.*

23         Here, the evidence currently before the court does not establish that plaintiff's

24  unfair competition claim is barred by section 17208's four-year limitations period.  Defendant

25  acknowledges that in evaluating a motion for judgment on the pleadings, the court may consider

26  only the factual allegations of the first amended complaint and judicially-noticed facts.  *See*

27  _____

28  [2] Defendant's motion does not argue that plaintiff's false advertising claim is time-barred.

                                      12

1   Def.'s Mem. P. & A. at 16 n.4.  The first amended complaint alleges defendant filed an

2   application with the USPTO for a trademark for the name "Baja Auto Insurance," which it

3   abandoned in May 2009, but the first amended complaint does not allege defendant actually used

4   the challenged marks in commerce at that time.  In addition, defendant has not submitted

5   judicially-noticed facts establishing its use of the challenged marks in 2009.  The earliest

6   infringement that can be inferred from the allegations of the first amended complaint occurred in

7   2011, when plaintiff began receiving communications intended for defendant.  *See* FAC ¶¶ 21,

8   23.  As stated above, plaintiff filed this action on October 15, 2014, so 2011 is within the four-

9   year limitations period for unfair competition claims.  Because defendant has not met its initial

10  burden of proving plaintiff's unfair competition claim is time-barred, the burden has not shifted to

11  plaintiff to demonstrate its claim survives under an equitable exception.  *See Aryeh*, 55 Cal. 4th at

12  1197.  Accordingly, defendant's motion for judgment on plaintiff's unfair competition claim is

13  denied.

14  IV.   <u>MOTIONS FOR LEAVE TO AMEND</u>

15          Each party has moved for leave to amend its pleadings.  ECF No. 44 (plaintiff);

16  ECF No. 37 (defendant).  Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court

17  should freely give leave [to amend a pleading] when justice so requires," and the Ninth Circuit

18  has "stressed Rule 15's policy of favoring amendments," *Ascon Props., Inc. v. Mobil Oil Co.*, 866

19  F.2d 1149, 1160 (9th Cir. 1989).  "In exercising its discretion [regarding granting or denying

20  leave to amend,] 'a court must be guided by the underlying purpose of Rule 15—to facilitate

21  decision on the merits rather than on the pleadings or technicalities.'"  *DCD Programs, Ltd. v.*

22  *Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979

23  (9th Cir. 1981)).  However, "liberality in granting leave to amend is subject to several

24  limitations . . . . includ[ing] undue prejudice to the opposing party, bad faith by the movant,

25  futility, and undue delay."  *Cafasso*, 637 F.3d at 1058 (internal citations and quotation marks

26  omitted).  In addition, a court should look to whether the plaintiff has previously amended the

27  complaint, as "the district court's discretion is especially broad 'where the court has already given

28

1   a plaintiff one or more opportunities to amend [its] complaint.'" *Ascon*, 866 F.2d at 1161

2   (quoting *Leighton*, 833 F.2d at 186 n.3).

3              The court addresses each party's motion in turn.

4        A.    Defendant's Motion

5              Defendant seeks to file an amended answer and counterclaim to add allegations

6   arising from information discovered through discovery.  ECF No. 37.  Specifically, the proposed

7   counterclaim seeks declaratory judgment of defendant's non-infringement of plaintiff's marks;

8   declaratory judgment of the invalidity, unenforceability, and cancellation of plaintiff's marks; and

9   damages arising from plaintiff's false or fraudulent registration.  *Id.* at Ex. A.  Defendant submits

10  the amendment would not cause prejudice to plaintiff, the request is not brought in bad faith, and

11  the amendment would not affect the discovery or other pretrial deadlines.  ECF No. 37 at 4–5.

12  Defendant has not previously amended its answer.  In plaintiff's opposition to the motion,

13  plaintiff disputes the truth of the allegations contained in the proposed amended pleadings, but

14  does not provide any other reasons for denying the motion to amend.  ECF No. 39.

15             Because leave to amend should be given freely under Rule 15(a), and defendant

16  has shown good cause, the court grants defendant's motion for leave to file an amended answer

17  and counterclaim.

18       B.    Plaintiff's Motion

19             On February 22, 2016, plaintiff moved for leave to amend its first amended

20  complaint to join Confie Seguros, Inc. ("CSI"), Confie Insurance Group Holdings, Inc. ("CIGH"),

21  and Confie Seguros Texas, Inc. ("CST"), which are defendant's affiliates and/or subsidiaries, as

22  defendants in this action.  ECF No. 44.  Plaintiff's request is untimely under the court's June 16,

23  2015 Status (Pretrial Scheduling) Order, which required parties to seek leave to file any

24  amendments by December 11, 2015.  ECF No. 20 at 2.  Accordingly, in addition to meeting the

25  requirements of Federal Rule of Civil Procedure 15, plaintiff must also show good cause for

26  modifying the court's scheduling order.  ECF No. 20 at 9; Fed. R. Civ. P. 16(b)(4).

27             Plaintiff has provided declarations stating that during the course of discovery, and

28  as a result of plaintiff's investigation, plaintiff has discovered the following:

                                             14

(a) Baja Auto Insurance is doing business via the website bajaautoinsurance.com; (b) Baja Auto Insurance is a subsidiary of CIGH Services, Inc., which is a subsidiary of CIFH; (c) the rights to "Baja Auto Insurance" were purchased by CIGH and CST; (d) CIGH and CST are related to or affiliated with, among other entities, Confie Seguros, Inc., Confie Seguros Holdings, Co., Confie Seguros Holding II, Co., and Freeway Insurance Services, Inc.; (e) CIGH and CST are the registered owners of the "Baja Auto Insurance" trade style; (f) CIGH's website displays the infringing mark "Baja Auto Insurance;" and (g) Confie Seguros acquired Baja Auto Insurance.

ECF No. 44 at 6–7 (citing Ordonez Decl. II ¶¶ 12–13, ECF No. 44-2; Smith Decl. II ¶¶ 12–13, ECF No. 44-3).  Plaintiff contends it has diligently investigated the relevant parties, but was unable to decipher defendant's complex business structure until recently.  *See* ECF No. 44 at 7.  Specifically, plaintiff sent cease and desist letters to CIGH on December 24, 2015 and January 14, 2016, but received a response from a different entity, CSI.  *Id.* at 5–6.  Plaintiff then obtained an online business report that showed CST and CIGH are affiliated with other entities, including CSI, and own the "Baja Auto Insurance" trade style.  *Id.* at 5.  Plaintiff asserts it is in the interest of justice and judicial economy to join all related infringing parties in this action.  *See* Atrizadeh Decl. ¶ 4, ECF No. 44-4.  Plaintiff has previously amended its complaint once as a matter of course.  ECF No. 8.

In opposition to plaintiff's motion, defendant argues plaintiff was not diligent in seeking leave to amend, and joining additional parties would prejudice defendant by disrupting discovery and delaying the case schedule.  ECF No. 45 at 6–10.  Defendant submits evidence plaintiff anticipated joining the purchaser of defendant's insurance business since at least June 2015, when the court held its initial status conference.  *See* Torrence Decl. ¶ 5, ECF No. 46; ECF No. 18 at 2–3 (stating further investigation was required to ascertain the identity of the correct defendant(s) to add).  Defendant also submitted a declaration stating plaintiff's current counsel acknowledged receipt and review of the Trademark and Domain Name Assignment Agreement between defendant, CST, and CIGH by email on September 23, 2015, and the first page of the agreement discloses the parties to the agreement.  Torrence Decl. ¶¶ 8–9.

The court finds it would be in the interest of justice and judicial economy to join the additional defendants in this action.  In addition, it does not appear that plaintiff's request is

15

1  brought in bad faith, would cause undue delay, or would cause defendant undue prejudice,

2  especially because the new defendants appear to be defendant's affiliates and/or subsidiaries.

3  Having weighed the various interests, the court grants plaintiff's motion for leave to amend the

4  first amended complaint.  However, given defendant's representations, plaintiff is ordered to

5  show cause within fourteen days why it should not be sanctioned in the amount of $250 for its

6  failure to act diligently in seeking leave to amend.  In addition, to avoid prejudice to defendant,

7  barring extraordinary circumstances, the court will only consider modifying the case schedule

8  further if so requested by defendant or by joint stipulation.

9  V.     CONCLUSION

10         For the foregoing reasons, the court makes the following orders:

11         (1) Defendant's motion for judgment on the pleadings, ECF No. 25, is DENIED;

12         (2) Defendant's motion for leave to file an amended answer and counterclaim,

13  ECF No. 37, is GRANTED.  Defendant is ordered to file its amended answer and counterclaim

14  within fourteen (14) days of the date this order is filed.

15         (3) Plaintiff's motion for leave to amend the first amended complaint to join

16  additional parties as defendants, ECF No. 44, is GRANTED.  Plaintiff is ordered to file its second

17  amended complaint within fourteen (14) days of the date this order is filed.

18         (4) Plaintiff is ORDERED TO SHOW CAUSE within fourteen (14) days why it

19  should not be sanctioned in the amount of $250 for its failure to act diligently in seeking leave to

20  amend;

21         (5) To avoid prejudice to defendant, unless extraordinary circumstances are

22  shown, the court will only consider modifying the case schedule further if so requested by

23  defendant or by joint stipulation.

24         IT IS SO ORDERED.

25   DATED:  March 31, 2016.

26

27                                        UNITED STATES DISTRICT JUDGE

28