FRANCIS TORRENCE (SBN 154653)
Francis.Torrence@wilsonelser.com
SHANA F. INSPEKTOR (SBN 291841)
Shana.Inspektor@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ,**
    **EDELMAN & DICKER LLP**
525 Market Street, 17th Floor
San Francisco, CA 94105-2725
Telephone:  (415) 433-0990
Facsimile:  (415) 434-1370

VALERI C. WILLIAMS (SBN 24058797), Pro Hac Vice
Valeri.Williams@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ,**
    **EDELMAN & DICKER LLP**
Bank of America Plaza
901 Main Street, Suite 4800
Dallas, TX 75202-3758
Telephone: (214) 698-8053
Facsimile: (214) 698-1101

Attorneys for Defendant and Counterclaimant
PLANO INSURANCE GROUP, F/K/A
SHANZE ENTERPRISES, INC.
f/d/b/a BAJA AUTO INSURANCE

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAJA INSURANCE SERVICES, INC., a California corporation<br><br>          Plaintiff,<br><br>      v.<br><br>SHANZE ENTERPRISES, INC. d/b/a BAJA AUTO INSURANCE, and DOES 1 to 10,<br><br>          Defendants. | Case No. 2:14-cv-02423-KJM-AC<br><br>**DEFENDANT SHANZE ENTERPRISES, INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEFENDANT'S COUNTERCLAIMS AGAINST PLAINTIFF AND PETITION FOR DECLARATORY RELIEF**<br><br>First Amended Complaint Filed:  January 27, 2015 |

Defendant Plano Insurance Group, Inc., f/k/a Shanze Enterprises, Inc., which formerly did business as Baja Auto Insurance (hereafter, "Defendant" or "Plano"), hereby answers Plaintiff Baja Insurance Services, Inc. (hereafter "Plaintiff" or "BISI")'s First Amended Complaint ("Complaint") as follows:

**PARTIES**

1.      Answering the allegations of paragraph 1 of the Complaint, Defendant admits that plaintiff does business as Baja Insurance Services, Inc.   Defendant lacks sufficient information to either affirm or deny the remaining allegations and on that basis denies the remaining allegations contained therein.

2.      Answering the allegations of paragraph 2 of the Complaint, Defendant admits that it was formerly known as Shanze Enterprises, Inc., that it was incorporated in the State of Texas, that it formerly did business under the trade name "Baja Auto Insurance," and that its principle place of business in Dallas, Texas.

3.      Answering the allegations of paragraph 3 of the Complaint, Defendant denies the allegations contained therein.

**JURISDICTION AND VENUE**

4.      Answering the allegations of paragraph 4 of the Complaint, Defendant responds that the paragraph contains legal argument and/or legal statements, and Defendant is not obligated to either affirm or deny such allegations.   Defendant denies the remaining allegations contained therein.

5.      Answering the allegations of paragraph 5 of the Complaint, Defendant denies the allegations contained therein.

6.      Answering the allegations of paragraph 6 of the Complaint, Defendant denies the allegations contained therein.

**GENERAL ALLEGATIONS**

7.      Answering the allegations of paragraph 7 of the Complaint, Defendant admits that Plaintiff is an insurance brokerage firm.   Defendant lacks sufficient information to either affirm or deny the remaining allegations and on that basis denies the remaining allegations contained therein.   Defendant denies the allegations contained therein.

8.      Answering the allegations of paragraph 8 of the Complaint, Defendant admits that it previously used the name Baja Auto Insurance and the web site domain name www.bajaautoinsurance.com to promote its services.   Defendant lacks sufficient information to

DEFENDANT SHANZE ENTERPRISES, INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST
AMENDED COMPLAINT AND DEFENDANT'S COUNTERCLAIM AGAINST PLAINTIFF
Case No. 2:14-cv-02423-KJM-AC

1558074v.1

either affirm or deny the remaining allegations that relate to Plaintiff's awareness, and on that basis denies those allegations. Defendant denies the remaining allegations contained therein.

9.      Answering the allegations of paragraph 9 of the Complaint, Defendant admits that the exhibits referenced appear to be as described. Defendant denies the remaining allegations contained therein.

10.     Answering the allegations of paragraph 10 of the Complaint, Defendant denies the allegations contained therein.

11.     Answering the allegations of paragraph 11 of the Complaint, Defendant denies the allegations contained therein.

12.     Answering the allegations of paragraph 12 of the Complaint, Defendant lacks sufficient information to either affirm or deny the allegations that relate to Plaintiff's business practices and expenses, and on that basis denies those allegations. Defendant denies the remaining allegations contained therein.

13.     Answering the allegations of paragraph 13 of the Complaint, Defendant lacks sufficient information to either affirm or deny the allegations that relate to Plaintiff's business, and on that basis denies those allegations. Defendant denies the remaining allegations contained therein.

14.     Answering the allegations of paragraph 14 of the Complaint, Defendant lacks sufficient information to either affirm or deny the allegations that relate to Plaintiff's business, and on that basis denies those allegations. Defendant denies the remaining allegations contained therein.

15.     Answering the allegations of paragraph 15 of the Complaint, Defendant lacks sufficient information to either affirm or deny the allegations that relate to Plaintiff's business, and on that basis denies those allegations. Defendant denies the allegations contained therein.

16.     Answering the allegations of paragraph 16 of the Complaint, Defendant lacks sufficient information to either affirm or deny the allegations that relate to Plaintiff's business, and on that basis denies those allegations. Defendant denies the remaining allegations contained therein.

DEFENDANT SHANZE ENTERPRISES, INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST
AMENDED COMPLAINT AND DEFENDANT'S COUNTERCLAIM AGAINST PLAINTIFF
Case No. 2:14-cv-02423-KJM-AC

1558074v.1

17.     Answering the allegations of paragraph 17 of the Complaint, Defendant denies the remaining allegations contained therein.

18.     Answering the allegations of paragraph 18 of the Complaint, Defendant lacks sufficient information to either affirm or deny the allegations that relate to Plaintiff's business, and on that basis denies those allegations.  Defendant denies the remaining allegations contained therein.

19.     Answering the allegations of paragraph 19 of the Complaint, Defendant lacks sufficient information to either affirm or deny the allegations that relate to Plaintiff's business, and on that basis denies those allegations.

20.     Answering the allegations of paragraph 20 of the Complaint, Defendant lacks sufficient information to either affirm or deny the allegations that relate to Plaintiff's business, and on that basis denies those allegations.  Defendant denies the remaining allegations contained therein.

21.     Answering the allegations of paragraph 21 of the Complaint, Defendant lacks sufficient information to either affirm or deny the allegations that relate to Plaintiff's business, and on that basis denies those allegations.  Defendant denies the remaining allegations contained therein.

22.     Answering the allegations of paragraph 22, of the Complaint, Defendant lacks sufficient information to either affirm or deny the allegations that relate to Plaintiff's business, and on that basis denies those allegations.  Defendant denies the remaining allegations contained therein.

23.     Answering the allegations of paragraph 23 of the Complaint, Defendant lacks sufficient information to either affirm or deny the allegations that relate to Plaintiff's business, and on that basis denies those allegations.  Defendant denies the remaining allegations contained therein.

24.     Answering the allegations of paragraph 24 of the Complaint, Defendant denies the allegations contained therein.

25.     Answering the allegations of paragraph 25, of the Complaint, Defendant lacks

1558074v.1

sufficient information to either affirm or deny the allegations that relate to Plaintiff's business, and on that basis denies those allegations.  Defendant denies the remaining allegations contained therein.

26.     Answering the allegations of paragraph 26 of the Complaint, Defendant denies the allegations contained therein.

27.     Answering the allegations of paragraph 27 of the Complaint, Defendant denies the allegations contained therein.

28.     Answering the allegations of paragraph 28 of the Complaint, Defendant denies the allegations contained therein.

## FIRST CLAIM FOR RELIEF

29.     Answering the allegations of paragraph 29 of the Complaint, Defendant incorporates its responses to paragraphs 1-28.

30.     Answering the allegations of paragraph 30, of the Complaint, Defendant denies the allegations contained therein.

31.     Answering the allegations of paragraph 31 of the Complaint, Defendant denies the allegations contained therein.

32.     Answering the allegations of paragraph 32 of the Complaint, Defendant denies the allegations contained therein.

## SECOND CLAIM FOR RELIEF

33.     Answering the allegations of paragraph 33, of the Complaint, Defendant incorporates its responses to paragraphs 1-32.

34.     Answering the allegations of paragraph 34 of the Complaint, Defendant denies the allegations contained therein.

35.     Answering the allegations of paragraph 35, of the Complaint, Defendant denies the allegations contained therein.

36.     Answering the allegations of paragraph 36 of the Complaint, Defendant denies the allegations contained therein.

37.     Answering the allegations of paragraph 37 of the Complaint, Defendant denies the

allegations contained therein.

38.     Answering the allegations of paragraph 38 of the Complaint, Defendant denies the allegations contained therein.

39.     Answering the allegations of paragraph 39 of the Complaint, Defendant denies the allegations contained therein.

40.     Answering the Complaint's Prayer for Judgment (paragraphs A-J), Defendant denies that Plaintiff has been damaged in any way at all, generally or specifically, and further denies that Plaintiff is entitled to any recovery or relief at all, including the relief sought in paragraphs A-J.

## AFFIRMATIVE DEFENSES
### FIRST AFFIRMATIVE DEFENSE
**(FAILURE TO STATE A CAUSE OF ACTION)**

41.     As a first, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant alleges that Plaintiff's Complaint fails to states facts sufficient to constitute a cause of action upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE
**(ESTOPPEL)**

42.     As a second, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant alleges that Plaintiff is barred by the doctrine of estoppel.

### THIRD AFFIRMATIVE DEFENSE
**(WAIVER)**

43.     As a third, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant alleges that the claims are barred by the equitable doctrine of waiver.

### FOURTH AFFIRMATIVE DEFENSE
**(LACHES)**

44.     As a fourth, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant alleges that the claims are barred by the equitable doctrine laches.

1558074v.1

### FIFTH AFFIRMATIVE DEFENSE
### (FAIR USE)

45.    As a fifth, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant alleges that the Defendant's actions were done in good faith and constitute fair use.

### SIXTH AFFIRMATIVE DEFENSE
### (ACQUIESCENCE)

46.    As a sixth, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant alleges that this claim is barred by the doctrine of acquiescence.

### SEVENTH AFFIRMATIVE DEFENSE
### (FRAUD)

47.    As a seventh, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant alleges that Plaintiff is barred by the doctrine of fraud.

### EIGHTH AFFIRMATIVE DEFENSE
### (MISTAKE)

48.    As an eighth, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant alleges that Plaintiff is barred by the doctrine of mistake.

### NINTH AFFIRMATIVE DEFENSE
### (ABANDONMENT)

49.    As a ninth, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant alleges that Plaintiff has intentionally abandoned its trademark described in the Complaint.

### TENTH AFFIRMATIVE DEFENSE
### (FAILURE TO MITIGATE)

50.    As a tenth, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant alleges that Plaintiff failed to mitigate its alleged damages.

### ELEVENTH AFFIRMATIVE DEFENSE
### (STATUTE OF LIMITATIONS)

51.    As an eleventh, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant alleges that Plaintiff is barred by the applicable statutes of limitations.

7

**TWELFTH AFFIRMATIVE DEFENSE**
**(FEDERAL PREEMPTION)**

52.   As a twelfth, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant alleges that Plaintiff's claim of unfair competition, pursuant to Business & Professional Code § 17200 is preempted by Federal Trademark Law.

**THIRTEENTH AFFIRMATIVE DEFENSE**
**(ALL DEFENSES AVAILABLE UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE)**

53.   As a thirteenth, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant assert any and all defenses available under California Business & Professions Code § 1 *et seq.*, California Civil Code § 1, et seq., and any other applicable law, that Plaintiff seeks relief which is not sufficiently plead under the statute, and that Plaintiff has failed to state a claim under the statute.

**FOURTEENTH AFFIRMATIVE DEFENSE**
**(UNFAIR AVOIDANCE)**

54.   As a fourteenth, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant asserts that Plaintiff is trying to avoid other controlling law by pleading unfair business practice claims under Business & Professional Code § 17200.

**FIFTEENTH AFFIRMATIVE DEFENSE**
**(SAFE HARBOR)**

55.   As a fifteenth, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant alleges that the acts alleged by Plaintiff in support of its unfair business practice claims under Business & Professional Code § 17200 are authorized by the Legislature and thus are protected acts.

**SIXTEENTH AFFIRMATIVE DEFENSE**
**(UNCLEAN HANDS)**

56.   As a sixteenth, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant alleges that Plaintiff's Complaint is barred by the doctrine of unclean hands.

**SEVENTEENTH AFFIRMATIVE DEFENSE**
**(NO DILUTION)**

57.   As an seventeenth, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant alleges that Plaintiff's alleged trademarks are not famous, and therefore

8

DEFENDANT SHANZE ENTERPRISES, INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEFENDANT'S COUNTERCLAIM AGAINST PLAINTIFF
Case No. 2:14-cv-02423-KJM-AC
1558074v.1

have not been damaged under the theory of dilution.

### EIGHTEENTH AFFIRMATIVE DEFENSE
### (WEAK MARKS)

58.     As a eighteenth, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant alleges that the Plaintiff's marks are weak (at best), given concurrent third party use of similar marks.

### NINETEENTH AFFIRMATIVE DEFENSE
### (NO SECONDARY MEANING)

59.     As a nineteenth, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant alleges that Plaintiff's marks are unprotectable and lack secondary meaning.

### TWENTIETH AFFIRMATIVE DEFENSE
### (PERMISSION)

60.     As a twentieth, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant alleges that Plaintiff's claims are barred in whole or in part because Plaintiff as acquiesced to Defendant's use of the asserted trademarks.

### TWENTY-FIRST AFFIRMATIVE DEFENSE
### (NO DAMAGE)

61.     As a twenty-first, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant alleges that Plaintiff's claims are barred in whole or in part on the ground that Plaintiff has not been damaged sufficiently to obtain any requested relief.

### TWENTY-SECOND AFFIRMATIVE DEFENSE
### (RESERVATION TO AMEND)

62.     As a twenty-second, separate and distinct affirmative defense to Plaintiff's Complaint, Defendant reserves the right to amend these affirmative defenses and to assert additional defenses as this litigation develops and new information is discovered.

### DEFENDANT'S COUNTERCLAIMS AND
### PETITION FOR DECLARATORY RELIEF

Defendant and Counterclaimant Plano Insurance Group, Inc. hereby asserts the following counterclaims against Plaintiff and Counter Defendant Baja Insurance Services, Inc.

1558074v.1

**NATURE OF THE ACTION**

1.     This action arises and is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 and the trademark laws of the United States, 15 U.S.C. § 1501, *et seq.*, and seeks a declaration that Counterclaimant does not infringe BISI's asserted trademarks under either 15 U.S.C. §§ 1114 or 1125(a).  Additionally, Counterclaimant seeks a declaration that the asserted trademarks are invalid and unenforceable and ordered cancelled pursuant to 15 U.S.C. § 1119.

**PARTIES**

2.     Counterclaimant Plano is a Texas corporation with its principal place of business in Plano, Texas.

3.     Upon information and belief, Counter Defendant BISI is a California corporation with its principal place of business in Sacramento, California.

**JURISDICTION AND VENUE**

4.     Subject to Counterclaimant Plano's defenses and denials, Counterclaimant Plano alleges that this Court has jurisdiction over the subject matter of these Counterclaims under, without limitation, 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, and venue for these Counterclaims is proper in this district.

5.     This Court has personal jurisdiction over Counter Defendant BISI.

**FACTUAL BACKGROUND**

A.     **Plano Begins Selling Insurance In Texas As "BAJA AUTO INSURANCE" In 2006.**

6.     Plano started selling low cost auto insurance under the trade name "Baja Auto Insurance" when it opened its first store at 1416 South Buckner Blvd. in Dallas, Texas in 2006. Exhibit A is the Assumed Name Certificate filed with the Dallas County Clerk's Office on **May 18, 2006** showing Plano doing business as Baja Auto Insurance.

7.     Plano's Texas insurance license, which is required for any agent or broker selling insurance in the state, was issued by the Texas Department of Insurance on **July 21, 2006**. *See* Exhibit B.

8.     Plano's first store was located in a part of the city that is favored by Hispanic consumers, and Plano soon found a loyal customer base.  Within seven months, Plano opened

1   its fifth Baja Auto Insurance store front and expanded to other Texas cities.  Exhibit C, dated

2   **October 9, 2006**, contains a receipt for a "Baja Auto Insurance" sign purchased for a new store.

3   Exhibits D and E are Assumed Name Certificates for two Baja Auto Insurance stores that Plano

4   opened in Carrollton, Texas and Irving, Texas in **December 2006.**

5          9.     By 2009, Plano had expanded its operations to include more than two dozen

6   insurance stores in Texas under the Baja Auto Insurance trade name; ninety-three percent (93%)

7   of its customers were Hispanic.  Plano sold insurance only in the State of Texas and never sought

8   licensing   to   expand   its   operations   to   other   states.     Plano   used   its   website,

9   BajaAutoInsurance.com, to promote insurance services to Texas consumers, provide accident

10  claims forms online, and assist customers in locating the nearest Baja Auto Insurance store.

11  **B.**   **Plano's Common Law and Registered Service Marks In Texas.**

12         10.    Plano developed common law trademark rights in Texas by continuously using

13  the term "Baja Auto Insurance" to market and sell its insurance services after the first store

14  opened in May 2006.

15         11.    In 2009, as part of its expansion efforts, Plano had a design and word mark

16  created.  The mark shows a stylized VW Beetle in a red circle between the words "Baja" and

17  "Auto:"

18
19  

20         12.    Plano obtained two Certificate of Service Mark Registrations through the Texas

21  Secretary of State's Office protecting (i) the Beetle design alone, Registration No. 801290563

22  (July 6, 2010) and (ii) the Beetle design in combination with the "Baja Auto Insurance" word

23  mark, Registration No. 801383037 (March 7, 2011).   Collectively, the two registered marks and

24  the common law mark will be hereinafter referred to as the "BAJA AUTO INSURANCE"

25  marks.  Exhibits F and G contain the registration records for both BAJA AUTO INSURANCE

26  marks.

27

28

DEFENDANT SHANZE ENTERPRISES, INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST
AMENDED COMPLAINT AND DEFENDANT'S COUNTERCLAIM AGAINST PLAINTIFF
Case No. 2:14-cv-02423-KJM-AC
1558074v.1

13.     Plano spent more than $8,600,000.00 on the marketing and advertising of its insurance services under the BAJA AUTO INSURANCE marks.  Promotion took the form of advertising on the Internet, on billboards, in newspapers, and on the radio.

14.     When Counter Defendant BISI filed suit against Plano in October 2014 [Doc.1], Plano was operating twenty-five (25) store fronts in Texas selling its services as Baja Auto Insurance.

15.     Plano sold the stores, the BAJA AUTO INSURANCE marks, and related assets to Confie Insurance Group Holdings, Inc. ("Confie") on February 10, 2015.

**C.     BISI and the Accused BISI Service Marks.**

16.     BISI claims that it started selling insurance services under the trade name "Baja Insurance Services, Inc." in the State of California in 1998.     BISI's headquarters is located in Sacramento, and BISI's website, BajaIns.com, shows that BISI operates four stores in California.  BISI claims that Hispanic consumers comprise approximately eighty-five percent (85%) of its customer base.   From 1998 through 2013, BISI was prohibited from selling insurance outside the State of California because it lacked the required insurance licensing.  *See* Ex. J, pp. 31, 52.

17.     However, on October 9, 2015 [Docs 30-2 and 30-3], BISI's CEO, Salvador Ordonez, Sr. ("Ordonez") and its General Counsel, Tony Smith, falsely told the Court in sworn declarations "under penalty of perjury" that BISI had been "continuously writing insurance policies for customers that reside in Mexico."  *See* Exhibits H and I.  BISI's CEO has since *admitted* in deposition testimony that the declarations were untrue because (i) no policies were ever sold in Mexico, (ii) no policies were sold to residents of Mexico, and (iii) BISI was never licensed to sell insurance in Mexico.   *See* Exhibit J—Salvador Ordonez, Sr.'s Deposition ("Ordonez Dep."), pp. 97-98, 110-111.

18.     BISI owns the following two service marks, which it registered with the United States Patent & Trademark Office ("USPTO"):

*(1)     The BISI '815 MARK.*

19.     On June 11, 2007, BISI filed an application with the USPTO for registration of

a design and word mark. The mark shows the words "Baja Insurance Services, Inc." next to a cutout of Baja, California, which is a state of Mexico.



20.     Ordonez __*admitted*__ that BISI's application for its first trademark was filed __*more than a year after*__ Plano began its insurance operations in Texas under BAJA AUTO INSURANCE common law mark in May 2006. *See* Ex. J, pp. 59-60; Exs. A-E, K.

21.     Ordonez further admitted that he filed a Section 1(b) Intent-to-Use application and averred that BISI's mark had not been used in commerce. *See* Ex. J, pp. 149-150; Ex. P. BISI subsequently amended its application to claim the mark had been used in commerce.

22.     The USPTO granted registration of BISI's design and word mark, Registration No. 3,568,815, (the "'815 Mark") on February 3, 2009. *See* Ex. K.

Coincidentally, on February 3, 2009, Plano opened its twenty-first (21st) store front in Texas under the BAJA AUTO INSURANCE marks. It had no knowledge of BISI's operations in California or attempts to register the '815 Mark.

### (2)     The '175 Mark.

23.     BISI applied for its second service mark, a word-only mark, on April 14, 2010, permitting it to use the term "Baja Insurance Services, Inc." without restriction as to a particular font, style, size, or color:



24.     __*At the time BISI filed its USPTO application for this mark, Plano had been selling insurance in the State of Texas for forty-eight months (4 years) and operated twenty-five (25) stores.*__

25.     The USPTO granted registration of BISI's mark, Registration No. 3,919,175, (the "'175 Mark") on February 15, 2011. *See* Ex. L.

DEFENDANT SHANZE ENTERPRISES, INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST
AMENDED COMPLAINT AND DEFENDANT'S COUNTERCLAIM AGAINST PLAINTIFF
Case No. 2:14-cv-02423-KJM-AC
1558074v.1

26.     BISI's '175 Mark and '815 Mark will be hereinafter referred to collectively as the "Accused Marks."

**D.     BISI's Material Misrepresentations in Its Sworn Declaration to Obtain USPTO Registration of the '815 Mark.**

27.     Ordonez has admitted that, from 1998 through 2013, BISI was restricted to selling insurance *only in the State of California* because it lacked the required insurance licenses to legally operate in other U.S. states or in Mexico.  *See* Ex. J, pp. 54, 197-199.

BISI's First Amended Complaint, expressly claimed that *all* of BISI's insurance operations—"the offering for sale, sale, marketing, advertising and promotion of insurance related products and services—were confined to the "California region" and, therefore, BISI's service marks had a strictly *intrastate* use [Doc. 8, ¶ 10].[1]  Under the Lanham Act, a trademark must be used in *interstate* commerce in order to qualify for trademark registration.  Thus, any sworn declaration that a mark has been "used in commerce" means the owner of the mark is swearing that his mark has been used in *inter*state commerce, not *intra*state commerce.

28.     On October 8, 2008, Ordone, electronically filed a sworn Declaration of Five Years Substantially Exclusive and Continuous Use of the Mark in Commerce ("Declaration") to obtain registration on the USPTO's Principal Register for BISI's '815 Mark.  As shown in Exhibit M, Ordonez's sworn Declaration stated:

> *The ['815 Mark] has become distinctive of the services through the applicant's substantially exclusive and <u>continuous use in commerce</u> of the mark with the services for <u>at least five years immediately before the date of this statement</u>.*

29.     The Declaration warned:

> *The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and that such <u>willful false statements may jeopardize the validity of the application or any resulting registration</u>….*

---

[1] Notably, BISI omitted the quoted statement above from its Second Amended Complaint & Application for Injunctive Relief filed on April 21, 2016 [Doc. 57].

DEFENDANT SHANZE ENTERPRISES, INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEFENDANT'S COUNTERCLAIM AGAINST PLAINTIFF

Case No. 2:14-cv-02423-KJM-AC

1558074v.1

(emphasis added).

30.     Ordonez's Declaration was false because BISI lacked the licensing to legally sell insurance in any other U.S. state but California.  BISI also could not legally sell insurance in Mexico because it was not licensed there either.  Furthermore, BISI was prohibited from selling insurance to anyone but California residents, thus, if it received calls from out-of-state customers wanting to purchase insurance, BISI could not legally it sell it to them.  Thus, the '815 Mark had never been in "continuous use in commerce… for at least five years" when Ordonez executed the Declaration.

31.     Additionally, evidence from BISI's business and trademark records and deposition testimony from Ordonez substantiates that BISI knew it was making material misrepresentations to the USPTO to fraudulently obtain registration for the '815 Mark.   In particular, Ordonez admitted that in 2008:

> (a)  BISI had never sold an insurance policy to customers in any other U.S. state or Mexico;
>
> (b)  BISI had never sought or solicited customers in any other U.S. state or in Mexico by spending money on marketing and advertising targeting those customers;[2]
>
> (c)  BISI had never operated an office or store front in any other U.S. state or in Mexico;
>
> (d)  BISI had never received financial revenue from the sale of insurance policies in any other U.S. state or in Mexico.  *See* Ex. J, pp. 196-200.

32.     Additionally, in a letter discovered in BISI's trademark files, dated January 4, 2008, BISI admitted that none of its insurance services were offered in Mexico:

> ***2.   We operate in California and <u>do not have any businesses in the states of Mexico nor plan to operate in the states of Mexico.</u>***
>
> ***3.   The goods or services we provide that being insurance services for example, auto, life, health, home…as we are an agency, and thus all applications for insurance are processed <u>in the</u>***

---

[2] By comparison, Ordone has testified that BISI regularly advertises its insurance services to California customers via TV, radio, magazines, and newspapers.  *See* Ex. J, pp. 39-40.

DEFENDANT SHANZE ENTERPRISES, INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEFENDANT'S COUNTERCLAIM AGAINST PLAINTIFF

Case No. 2:14-cv-02423-KJM-AC

1558074v.1

_**state of California only**_.

*See* Exhibit N (emphasis added).

33.     The letter was written only ten (10) months before Ordonez filed his 2008 Declaration with the USPTO falsely swearing BISI's '815 Mark had been in use in commerce for at least five years.  BISI's records and testimony show that, when the USPTO granted registration of the '815 Mark on February 3, 2009, the mark had never been used to sell insurance services outside of the State of California.

**E.     BISI's Material Misrepresentations in Its Sworn Declaration to Obtain USPTO Registration of the '175 Mark.**

34.     On April 14, 2010, an attorney for BISI submitted to the USPTO a sworn Declaration supporting BISI's application for registration of the '175 Mark, which claimed that the word-only mark had "first been used in commerce at least as early as 10/10/1998, and is now in use in such commerce."  *See* Exhibit N.  The Declaration warned that "willful false statements and the like so made are punishable by fine or imprisonment, or both… and that such willful false statements and the like, may jeopardize the validity of the application or any resulting registration…."

35.     BISI knew the Declaration to be false for the following reasons:

(a) BISI was prohibited from legally selling insurance in other U.S. states or in Mexico because it lacked the required licensing to do so;

(b) BISI had never sold insurance policies to customers in any other U.S. state or Mexico at the time it submitted the Declaration;

(c) BISI never sought or solicited customers in other U.S. states or Mexico by spending money on marketing and advertising outside the State of California; and

(d) BISI had never received financial revenue from the sale of insurance policies in any other state or in Mexico.  *See* Exhibit J, pp. 200-204.

DEFENDANT SHANZE ENTERPRISES, INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEFENDANT'S COUNTERCLAIM AGAINST PLAINTIFF
Case No. 2:14-cv-02423-KJM-AC

1558074v.1

36.     Thus, BISI knew that the '175 Mark had never been in "continuous use in commerce" when it applied for federal service mark registration through the USPTO in April 2010.

**F.     BISI's Material Misrepresentations in Its Sworn Declaration to Obtain Incontestability Status for the '815 Mark.**

37.     On June 9, 2014, BISI fraudulently swore in its Declaration for Incontestability for the '815 Mark:

> *The mark has been in **continuous use in commerce** for **five consecutive years** after the date of registration.*

*See* Exhibit O (emphasis added).

38.     BISI's business and trademark records, along with Ordonez's deposition testimony, show that BISI knew this statement to be false for the following reasons:

(a)     BISI was not licensed to legally sell insurance policies outside of the State of California *until January 2013*, so it could not have been using the '815 Mark continuously in commerce before that time;

(b)     BISI never sold any insurance policies to consumers outside of the State of California—either in other U.S. states or in Mexico—before  May 28, 2013; and

(c)     BISI has never operated an office or store front in any other U.S. state or in Mexico;

(d)     BISI has never spent any money specifically promoting its insurance services through advertising and marketing to consumers outside the State of California; and

(e)     BISI did not receive any financial revenue from the sale of insurance policies to consumers outside the State of California prior to obtaining its Texas insurance license in 2013.

39.     BISI could not obtain incontestability status for the '815 Mark without swearing the mark had been in continuous use in commerce for at least five consecutive years.  The evidence from BISI's own files and the testimony of Ordonez show that BISI knowingly made material misrepresentations in its sworn Declaration, which resulted in the USPTO granting incontestability for the '815 Mark on June 24, 2014.

DEFENDANT SHANZE ENTERPRISES, INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST
AMENDED COMPLAINT AND DEFENDANT'S COUNTERCLAIM AGAINST PLAINTIFF
Case No. 2:14-cv-02423-KJM-AC
1558074v.1

### G.   BISI's Intentional Infringement of the BAJA AUTO INSURANCE MARKS in Texas.

#### (1)   Plano is the Undisputed Senior User of the Baja Mark in Texas.

40.    Numerous publicly recorded documents (*e.g.*, assumed name certificates and registrations with the Texas Secretary of State and Texas Department of Insurance) and BISI's own business records establish that Plano was selling insurance under the BAJA AUTO INSURANCE marks in Texas at least *thirteen months before* BISI filed its first application for trademark protection with the USPTO.  *See* Ex. J, pp. 229-230.  Therefore, under the Lanham Act § 15, Plano was the senior user of any Baja mark in Texas.[3]  In Texas, Plano's senior use of the BAJA AUTO INSURANCE marks trumps BISI's subsequent federal registration of the Accused Marks with the USPTO—even if a mark is incontestable.[4]

#### (2)   BISI Admits Its Accused Marks are Confusingly Similar to the BAJA AUTO INSURANCE Marks.

41.    BISI admitted that Plano's extraordinarily successful insurance operations in Texas in connection with the BAJA AUTO INSURANCE MARKS caught its attention as far back as 2011 because it began receiving inquiries from Texas consumers:

> **As early as 2011**, Plaintiff began receiving telephone calls, emails and written correspondence from various Texas residents who were either requesting insurance quotes, asking for customer service, making insurance claims and/or making yearly premiums. Plaintiff also began receiving numerous letters from insurance carriers that referenced Texas policy holders.  The number and frequency of these phone calls, emails, and written correspondence steadily increased over time.  Eventually, Plaintiff realized that these communications were intended for Defendant.

[Doc. 8 at ¶ 21] (emphasis added).

---

[3] *See Miller v Glenn Miller Productions, Inc.,* 454 F.3d 975 (9th Cir. 2006) (holding that Lanham Act § 15, 15 U.S.C.A. § 1065, preserves the common law rights of a senior user. The court rejected the junior user's argument that because it owned an incontestable registration, it had to legally be the owner of the mark, not just a licensee of a senior user who had not registered)); *see also City of New York v. Tavern on the Green,* 427 B.R. 233, 94 U.S.P.Q.2d 1519 (S.D.N.Y. 2010) (Landlord-owner and senior user of the restaurant mark TAVERN ON THE GREEN prevailed under Lanham Act § 15, over junior user tenant who obtained an incontestable registration.  Registration was cancelled for fraud because junior user knew that it was not the owner of the mark.)).

[4] *See Miller,* 454 F.3d 975 (9th Cir. 2006); *see also Noah's Inc. v. Nark, Inc.,* 560 F.Supp. 1253 (E.D. Mo. 1983).

42.  BISI further admitted in its response to Plano's Interrogatory No. 7 that "over the past 3-4 years:"

- BISI has "received approximately 5000 inbound phone calls from *individuals who were clients of "Baja Auto Insurance"*… or from *Texas consumers* looking for insurance;"

- BISI has "received approximately 650 emails from *individuals that live in the State of Texas* requesting quotes;" and

- BISI has "received approximately 350 emails, 300 telephone calls and 75 faxes from *individuals who live in Texas* who were applying for employment" with Baja Auto Insurance.

(emphasis added).

43.  Plano never promoted or sold insurance to customers outside of the State of Texas. And, as BISI repeatedly stated in its interrogatory response, the communications it received were from Texas consumers who associated the name "Baja" with insurance services promoted under the BAJA AUTO INSURANCE marks.

> (3)  **BISI Intentionally Infringed on the BAJA AUTO INSURANCE MARKS in Texas.**

44.  BISI has information about Plano's senior use of the Baja mark contained in its business records dating back to 2013.  BISI's records show that it printed out a copy of Plano's Texas insurance license on December 10, 2013.  *See* Ex. J, pp. 57-60; Ex. B.  The license shows that Plano obtained its insurance license from the Texas Department of Insurance on July 21, 2006.  Ordonez admits that BISI had knowledge of the license in 2013 because BISI's records prove such:

Q.  So in 2013, you knew about the fact that Plano or Shanze had a Texas insurance license and was doing business with various insurance companies in 2006, correct?

A.  Yes.

Q.  And BISI did not get its—it did not file for its first registration of the trademark until 2007: isn't that correct?

1558074v.1

A.     Yes.

*See* Ex. J, p. 229-230; *see also* Ex. J, p. 60.

45.    BISI's 2013 business records also contained a list of Assignments showing the various insurers that Plano had relationships with back in 2006.  *See* Ex. J, pp. 60-62; Ex. B.

46.    Additionally, BISI's business records contained a January 1, 2013 printout out of BAJA AUTO INSURANCE stores in Texas.  *See* Ex. J., pp. 62-64.  The first two stores on the list are located in Arlington, Texas.  *See* Exhibit J, pp. 62-63; Ex. Q.

47.    BISI's CEO *admitted* that he reviewed the list of stores when searching for a location to open BISI's new Texas office, and he ***intentionally*** signed a lease to open the office in Arlington, *less than 5 miles* from one BAJA AUTO INSURANCE store front and *within the same block* as the other BAJA AUTO INSURANCE store front:

> Q.    Mr. Ordonez, we were talking about your store location in comparison to the Baja Auto Insurance store location.  Are you aware that Baja Auto Insurance location 3200 South Cooper Street is directly across the street from the BISI office location?
>
> A.    Yes.
>
> Q.    You know it's directly across the street.
>
> A.    Not exactly across the street, but it is across the street.
>
> Q.    And you knew that when you decided to lease the storefront back in 2015, I believe it was; correct?
>
> A.    Correct.
>
> Q.    So you selected that location based on where Baja Auto Insurance—a Baja Auto Insurance storefront was located.
>
> A.    Yes.

Ex. J, pp. 70-71; *see also* Ex. J, pp. 62-63.

48.    On March 28, 2016, Ordonez testified that BISI plans to open its Arlington, Texas office as soon as possible—perhaps within a matter of weeks.  *See* Ex. J. p. 74.  Ordonez

1    admitted that BISI intends to "piggyback" off of leads generated by the success of the BAJA

2    AUTO INSURANCE marks.  *See* Ex. J, pp. 138-139, 148-149.

3    **H.    Plano Has Been Damaged by BISI's Actions.**

4    49.    In October 2014, when BISI filed suit against Plano for trademark infringement

5    and related causes of action, Plano owned the BAJA AUTO INSURANCE MARKS.  Plano sold

6    its insurance business and ownership in the BAJA AUTO INSURANCE MARKS and brand to

7    Confie in February 2015.

8    50.    Plano apprised BISI of the sale and transfer of trademark ownership to Confie by

9    providing BISI with a copy of the trademark assignments.  Nevertheless, BISI has maintained

10   this suit against Plano causing Plano to incur substantial legal fees.  Plano's legal fees exceed

11   $100,000.00.

12   51.    Furthermore, BISI's fraudulent registration of the Accused Marks and fraudulent

13   procurement of incontestability for the '815 Mark have also caused Plano to incur substantial and

14   unnecessary losses.

15   **I.    Plano's Non-Infringement of BISI's Marks.**

16   52.    Ordonez admits that BISI has no evidence that Plano has ever sold any insurance

17   policies in California or otherwise competed with BISI in California.  *See* Ex. J, pp. 226-228.

18   53.    BISI's only competition with Plano has occurred in the State of Texas, and

19   Ordonez admits that BISI did not file for its first federally registered copyright until 2007—

20   *more than a year after* Plano was already using BAJA AUTO INSURANCE as a common law

21   mark in Texas.

**FIRST CLAIM FOR RELIEF**

22

23   **DECLARATORY JUDGMENT OF NON-INFRINGEMENT**
     **OF THE ASSERTED U.S. TRADEMARKS,**

24   **REGISTRATION NOS. 3,568,815 AND 3,919,175**

25   54.    Counterclaimant Plano re-alleges and incorporates by reference each of the

26   allegations contained in paragraphs 1- 53 of this Counterclaim.

27   55.    BISI has accused Counterclaimant Plano of trademark infringement pursuant to

28   15 U.S.C. §§ 1114 and 1125(a) and Cal. Bus. & Prof. Code § 14245.

56.     Counterclaimant Plano denies BISI's allegations of trademark infringement as contained in its Answer and Counterclaims as set forth above.

57.     Counterclaimant Plano is entitled to declaratory judgment because it was the senior user of the "Baja" mark in the State of Texas before BISI filed its applications for registration of either the '815 Mark or the '175 Mark.   Counterclaimant Plano never sold insurance outside of the State of Texas.   Therefore, Counterclaimant Plano did not infringe on BISI's marks.

58.     Counterclaimant Plano is also entitled to declaratory judgment because BISI's '815 Mark and '175 Mark are invalid and unenforceable due BISI's fraud in the procurement of the marks' registrations.

59.     BISI's allegations of infringement pose a threat to Counterclaimant Plano's business and have and will continue to harm Counterclaimant Plano until such claims are resolved.

60.     As a result of the foregoing, an actual case or controversy exists regarding BISI's allegations of trademark infringement.

61.     Counterclaimant Plano has no adequate remedy at law and therefore seeks declaratory judgment pursuant to 28 U.S.C. §§ 2201-02 that Counterclaimant Plano has not infringed on BISI's asserted U.S. Trademarks, Registration Numbers  3,568,815 and 3,919,175.

## SECOND CLAIM FOR RELIEF

### DECLARATORY JUDGMENT OF INVALIDITY, UNENFORCEABILITY, AND CANCELLATION OF BISI'S '815 MARK

62.     Counterclaimant Plano re-alleges and incorporates by reference each of the allegations contained in paragraphs 1- 61 of this Counterclaim.

63.     BISI's asserted '815 Mark is invalid and should be cancelled because BISI knowingly and intentionally committed fraud on the USPTO during the application process for the '815 Mark when it swore in its October 8, 2008 Declaration that the mark had been in use in commerce for five years.  BISI knew this statement to be false because at the time the statement was made because: (i) BISI was not licensed to legally sell insurance anywhere except

California; (ii) BISI's business records reveal no insurance sales were made to customers residing outside of California during the relevant time frame; (iii) BISI's business records reveal BISI did not solicit customers or pay to advertise its insurance services outside of California during the relevant time frame; (iv) BISI operated no offices or store fronts in any other U.S. state or Mexico during the relevant time frame; and (v) BISI generated no revenue from the sale of insurance policies to customers in other U.S. states or Mexico during the relevant time frame.

64.     Moreover, BISI's business records reveal a letter discovered in BISI's trademark files, dated January 4, 2008, in which BISI admitted that none of its insurance services were offered in Mexico and that the services were ***only offered in California***.   This false representation that BISI had used its mark in commerce for five years was material, and BISI intended to deceive the USPTO with it because registration for the '815 Mark on the Principal Register would not have issued without it.

65.     Furthermore, even if the '815 Mark is not cancelled, BISI's incontestability status should be cancelled because BISI knowingly and intentionally committed fraud on the USPTO in its Section 15 declaration when it swore under oath that it had used the mark in commerce for the preceding five consecutive years, when it knew, *inter alia*, it was not legally licensed to do so outside of California.  BISI knew this statement to be false because it signed the June 24, 2014 Declaration while knowing it did not receive a license to sell insurance using the '815 Mark outside of California until January 2013.  BISI also knew from its own business records that (i) it had not sold any insurance policies to consumers in other U.S. states or in Mexico until after January 2013; (ii) it has never owned or operated an office or store front in any other U.S. state or in Mexico; (iii) it has never specifically targeted consumers in other U.S. states or in Mexico with advertising or marketing; and (iv) it never generated any revenue from the sale of insurance policies in any other U.S. state or in Mexico until after January 2013.  BISI's misrepresentation in the 2014 Declaration was material, and BISI intended to deceive the USPTO with it because without it, BISI would not have obtained incontestability status for the '815 Mark.

DEFENDANT SHANZE ENTERPRISES, INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEFENDANT'S COUNTERCLAIM AGAINST PLAINTIFF
Case No. 2:14-cv-02423-KJM-AC

1558074v.1

66.     Although Counterclaimant Plano sold its ownership interest in the contested BAJA AUTO INSURANCE MARKS, it nevertheless has standing as a defendant accused of trademark infringement in the pending civil action to assert a counterclaim for invalidity of BISI's '815 Mark due to BISI's fraud in procuring registration and incontestability for the mark through the USPTO.[5]

67.     Pursuant to 15 U.S.C. §§ 1027, 1064 and 1065, the U.S. trademark registration obtained by BISI for the '815 Mark is invalid, unenforceable, and should be cancelled because it was procured by fraud as set forth above.

68.     BISI's allegations of infringement pose a threat to Counterclaimant Plano's business and have and will continue to harm Counterclaimant Plano until such claims are resolved.

69.     As a result of the foregoing, an actual case or controversy exists regarding BISI's allegations of trademark infringement, which can be heard and decided by this Court under 15 U.S.C. §§ 1119.

70.     Counterclaimant Plano has no adequate remedy at law and therefore seeks declaratory judgment pursuant to 28 U.S.C. §§ 2201-02 and 15 U.S.C. §§ 1119, 1027, 1064 and 1065 that BISI's '815 Mark is invalid and unenforceable, and there was no infringement of the mark by Counterclaimant Plano.

71.     Counterclaimant Plano additionally seeks any further relief deemed appropriate by this Court pursuant to 28 U.S.C. § 2202.

---

[5] *See Rhodes v. Avon Products, Inc.,* 504 F.3d 1151, 1158-59 (9th Cir. 2007) (finding the trial court abused its discretion by not permitting a party, threatened with trademark infringement litigation, to seek declaratory judgment for invalidity and cancellation of a trademark.  In so finding, the Ninth Circuit quoted McCarthy on Trademarks and Unfair Competition:  "[I]f the declaratory plaintiff has in fact *been threatened with litigation for infringement…*, it should be allowed to bring an action for declaratory judgment to determine non-infringement, *and join with it a claim of invalidity of the mark and a prayer for cancellation of the declaratory defendant's federal registration*." 6 McCarthy § 32:55 (emphasis added)).

DEFENDANT SHANZE ENTERPRISES, INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEFENDANT'S COUNTERCLAIM AGAINST PLAINTIFF

Case No. 2:14-cv-02423-KJM-AC

1558074v.1

**THIRD CLAIM FOR RELIEF**

**DECLARATORY JUDGMENT OF INVALIDITY, UNENFORCEABILITY, AND CANCELLATION OF BISI'S '175 MARK**

72.     Counterclaimant Plano re-alleges and incorporates by reference each of the allegations contained in paragraphs 1- 71 of this Counterclaim.

73.     BISI's asserted '175 Mark is invalid and should be cancelled because BISI knowingly and intentionally committed fraud on the USPTO during the application process for the '175 Mark when it swore in its April 2010 Declaration that the mark had been in use in commerce.  BISI knew this statement to be false because at the time the statement was made:  (i) BISI was not licensed to legally sell insurance anywhere except California; (ii) BISI's business records reveal no insurance sales were made to customers residing outside of California during the relevant time frame; (iii) BISI's business records reveal BISI did not solicit customers or pay to advertise its insurance services outside of California during the relevant time frame; (iv) BISI has never owned or operated an office or store front in any other U.S. state or in Mexico; (v) BISI has never specifically targeted consumers in other U.S. states or in Mexico with paid advertising or marketing; and (vi) BISI never generated any revenue from the sale of insurance policies in any other U.S. state or in Mexico until after January 2013.

74.     Although Counterclaimant Plano sold its ownership interest in the contested BAJA AUTO INSURANCE marks, it nevertheless has standing as a defendant accused of trademark infringement in the pending civil action to assert a counterclaim for invalidity of BISI's '175 Mark due to BISI's fraud in procuring registration and incontestability for the mark through the USPTO.

75.     Pursuant to 15 U.S.C. §§ 1027 and 1064, the U.S. trademark registration obtained by BISI for the '175 Mark is invalid, unenforceable, and should be cancelled because it was procured by fraud as set forth above.

76.     BISI's allegations of infringement pose a threat to Counterclaimant Plano's business and have and will continue to harm Counterclaimant Plano until such claims are resolved.

77.     As a result of the foregoing, an actual case or controversy exists regarding BISI's allegations of trademark infringement, which can be heard and decided by this Court under 15 U.S.C. §§ 1119.

78.     Counterclaimant Plano has no adequate remedy at law and therefore seeks declaratory judgment pursuant to 28 U.S.C. §§ 2201-02 and 15 U.S.C. §§ 1119, 1027 and 1064 that BISI's '175 Mark is invalid and unenforceable, and there was no infringement of the mark by Counterclaimant Plano.

79.     Counterclaimant Plano additionally seeks any further relief deemed appropriate by this Court pursuant to 28 U.S.C. § 2202.

## FOURTH CLAIM FOR RELIEF

### CIVIL LIABILITY FOR FALSE OR FRAUDULENT REGISTRATION

80.     Plano re-alleges and incorporates by reference each of the allegations contained in paragraphs 1- 79 of this Counterclaim.

81.     BISI procured registration in the Patent and Trademark Office of the BISI '815 Mark by a false or fraudulent declaration or representation, when BISI's owner, Salvador Ordonez, Sr., swore in his USPTO Declaration that there had been five years of continuous use of the BISI '815 Mark prior to registration, in violation of 15 U.S.C. § 1120.

82.     BISI procured registration in the Patent and Trademark Office of the BISI '175 Mark by a false or fraudulent declaration or representation, when it swore in writing on its USPTO Declaration that the BISI '175 Mark had been "used in commerce," in violation of 15 U.S.C. § 1120.

83.     As a direct and proximate result of BISI's false or fraudulent declaration, and its use in Texas of the fraudulently obtained Accused Marks, Plano has suffered substantial damages.

## PRAYER FOR RELIEF

WHEREFORE, Defendant and Counterclaimant Plano Insurance Group prays that the Court grant it the following relief:

1.     That BISI take nothing by the Complaint;

2.      A declaration that Counterclaimant Plano did not infringe or otherwise violate BISI's asserted U.S. Trademark Registration No. 3,568,815 ('815 Mark);

3.      A declaration that Counterclaimant Plano did not infringe or otherwise violate BISI's asserted U.S. Trademark Registration No. 3,919,175 ('175 Mark);

4.      A declaration that BISI infringed upon the BAJA AUTO INSURANCE marks in Texas because Counterclaimant Plano was the senior user of the common law Baja mark in Texas;

5.      A declaration that BISI infringed upon the BAJA AUTO INSURANCE marks in Texas because Counterclaimant Plano was the senior user of the state-registered Baja mark in Texas;

6.      A declaration that federal registration of BISI's '815 Mark was obtained fraudulently by BISI and that BISI's registration application for the mark contained false statements;

7.      A declaration that federal registration of BISI's '175 Mark's was obtained fraudulently by BISI and that BISI's registration application for the mark contained false statements;

8.      A declaration that the incontestable status granted to BISI's '815 Mark was improperly granted because it was based upon fraudulent and false statements by BISI;

9.      A declaration that BISI's wrongful actions harmed Plano;

10.     A declaration that BISI willfully and/or intentionally infringed upon the common law BAJA AUTO INSURANCE marks in Texas, and such willfulness or intentionality is exceptional, which entitles Plano to damages and attorneys' fees;

11.     A declaration that BISI willfully and/or intentionally infringed upon the state-registered BAJA AUTO INSURANCE marks in Texas, and such willfulness or intentionality is exceptional, which entitles Plano to damages and attorneys' fees;

12.     A declaration that BISI's lawsuit was unreasonable, vexatious, and/or pursued in bad faith, which entitles Plano to damages and attorneys' fees;

13.     An order to the USPTO cancelling U.S. Trademark Registration No. 3,568,815 as well as the status of incontestability;

14.     An order to the USPTO cancelling U.S. Trademark Registration No. 3,919,175;

15.     An order to the USPTO declaring that Counterclaimant Plano was the senior user of the Baja mark in the State of Texas and any subsequent owner or assignee of the BAJA AUTO INSURANCE marks, now or in the future, is a senior user of the Baja mark in the State of Texas,

16.     An order to the USPTO restricting BISI's rights under the federally registered Accused Marks to geographic areas outside of the State of Texas;

17.     Order disgorgement of BISI's profits;

18.     Award Counterclaimant Plano recovery of its damages;

19.     Award Counterclaimant Plano its attorney fees, expenses, and costs;

20.     All such other relief that can be awarded to Counterclaimant Plano as this Court deems just and proper.

Dated:  April 28, 2016                              **WILSON, ELSER, MOSKOWITZ,**
                                                    **EDELMAN & DICKER, LLP**


                                                    */S/Francis Torrence*
                                                    FRANCIS TORRENCE
                                                    SHANA F. INSPEKTOR
                                                    Attorneys for Defendant and Counterclaimant
                                                    PLANO INSURANCE GROUP, F/K/A
                                                    SHANZE ENTERPRISES, INC.
                                                    f/d/b/a BAJA AUTO INSURANCE


                                                    **WILSON, ELSER, MOSKOWITZ,**
                                                    **EDELMAN & DICKER, LLP**
                                                    *(PRO HAC VICE APPLICATION PENDING)*


                                                    */S/Valeri C. Williams*
                                                    VALERI C. WILLIAMS
                                                    Pro Hac Vice
                                                    Attorney for Defendant and Counterclaimant
                                                    PLANO INSURANCE GROUP, F/K/A
                                                    SHANZE ENTERPRISES, INC.
                                                    f/d/b/a BAJA AUTO INSURANCE

DEFENDANT SHANZE ENTERPRISES, INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEFENDANT'S COUNTERCLAIM AGAINST PLAINTIFF
Case No. 2:14-cv-02423-KJM-AC
1558074v.1

# CERTIFICATE OF SERVICE

*Baja Insurance Services, Inc. v. Shanze Enterprises, Inc., et al.*
U.S. District Court, Eastern Dist. California Case No. 2:14-cv-02423-KJM-AC

At the time of service I was over 18 years of age and not a party to this action.  I am employed by WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP.  My business address is 525 Market Street, 17th Floor, San Francisco, California 94105.  My business telephone number is (415) 433-0990; my business fax number is (415) 434-1370.  On this date I served the following document(s):

**DEFENDANT SHANZE ENTERPRISES, INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEFENDANT'S COUNTERCLAIMS AGAINST PLAINTIFF AND PETITION FOR DECLARATORY RELIEF**

on the person or persons listed below, through their respective attorneys of record in this action, by placing true copies thereof in sealed envelopes or packages addressed as shown below by the following means of service:

☐: **By United States Mail.**  I placed the envelope(s) for collection and mailing, following our ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United

☐: **By Overnight Delivery.**  I enclosed the documents in an envelope or package provided by an overnight delivery carrier and address to the persons at the addresses below.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐: **By Messenger Service.**  I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below and provided them to a professional messenger service for service.

☒: **By Electronic Service.**  Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed below.

**Justin Welch , PHV**
Blazier, Christensen, Browder & Virr, PC
901 S. Mopac, Bldg. V, Ste. 200
Austin, TX 78746
512-476-2622
Fax: 512-476-8685
Email: jwelch@blazierlaw.com
**Attorney for Plaintiff**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

EXECUTED on April 28, 2016 at San Francisco, California.

*/S/Debbie de Rivero*
Debbie de Rivero